UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHERRY L. HARDEN,                           Case No. 16-12394

          Plaintiff,                        Terrence G. Berg
v.                                          United States District Judge

COMMISSIONER OF SOCIAL SECURITY,            Stephanie Dawkins Davis
                                            United States Magistrate Judge
          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 16, 21)**

## I.    PROCEDURAL HISTORY

          A.    Proceedings in this Court

On June 24, 2016, plaintiff filed the instant suit seeking judicial review of

the Commissioner's decision disallowing social security disability benefits.  (Dkt.

1).  Pursuant to 28 U.S.C. § 636(b)(1)(A)-(C) and Local Rule 72.1(b)(3), District

Judge Terrence G. Berg referred this matter to the undersigned magistrate judge

for the purpose of reviewing the Commissioner's decision denying plaintiff's

claims.  (Dkt. 3).  On November 25, 2016, plaintiff filed a motion for summary

judgment.  (Dkt. 16).  On February 24, 2017, the Commissioner filed a motion for

summary judgment (Dkt. 21), and plaintiff thereafter filed a reply (Dkt. 23).  The

matter is now ready for report and recommendation.

B.    Administrative Proceedings

On May 31, 2013, plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, and a Title XVI application for supplemental security income, alleging disability beginning April 1, 2012.[1] (Tr. 30).[2]  The Commissioner initially denied plaintiff's application on November 27, 2013.  (*Id*.).  Thereafter, plaintiff requested an administrative hearing, and on April 6, 2015, she appeared with counsel before Administrative Law Judge ("ALJ") Janet L. Alaga-Gadigian who considered her case *de novo*.  (Tr. 47-90). In a May 18, 2015 decision, the ALJ determined that plaintiff was not disabled. (Tr. 30-41).  The ALJ's decision became the final decision of the Commissioner on April 29, 2016 when the Social Security Administration's Appeals Council denied plaintiff's request for review.  (Tr. 1-6).

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] Plaintiff initially alleged an onset of January 1, 2012, but amended her alleged onset date to April 1, 2012 at the hearing.  (Dkt. 16, Pg ID 881).

[2] Social Security Proceedings Transcript herein cited as "Tr." and may be found at Docket Entry 11.

## II.    FACTUAL BACKGROUND

At the alleged onset date, plaintiff was a younger individual age 18-44 per the Social Security regulations.  20 C.F.R. § 404.1563.  Plaintiff has at least a high school education.  (Tr. 39).  Plaintiff has past work experience as a home health aide, head janitor, child monitor, sorter/pricer and assistant manager.  (*Id*.) Plaintiff claims that she has physical limitations that have prevented her from working.

### A.    ALJ Findings

The ALJ applied the five-step disability analysis to plaintiff's claims and found at step one that plaintiff did not engage in any substantial gainful activity since April 1, 2012, the alleged onset date.  (Tr. 32).  At step two, the ALJ found that since the alleged onset date of disability, plaintiff had the following severe impairments: obesity, tendinitis and plantar fasciitis of the left foot, fibromyalgia, carpal tunnel syndrome, and chronic pain syndrome.  (*Id.*)  Plaintiff's anemia, uterine fibroids and cocaine abuse were deemed non-severe impairments.  (Tr. 33). At step three, the ALJ found that since the onset date of disability, April 1, 2012, plaintiff did not have an impairment or combination of impairments that met or equaled one of the listings in the regulations.  (Tr. 34).  After careful consideration of the entire record, the ALJ determined that plaintiff had the residual functional capacity (RFC):

> to perform sedentary work as defined in 20 CFR
> 404.1567(a) and 416.967(a) with the following
> additional limitations: the claimant must be allowed to
> alternate between sitting and standing up to four times
> per hour during the workday and she should never
> operate foot controls; crawl; or climb ladders, ropes or
> scaffolds. She can occasionally climb ramp/stairs,
> balance, stoop, crouch, and kneel and can frequently
> perform fine and gross manipulation. She should avoid
> all exposure to hazardous machinery, unprotected
> heights, and vibration. She is further limited to unskilled
> jobs with simple, routine tasks.

(*Id.*). At step four, the ALJ determined that since April 1, 2012, plaintiff could not

perform any past relevant work. (Tr. 39). At step five, the ALJ found that, given

plaintiff's age, education, work experience and RFC, there were sufficient jobs

that exist in the national economy that plaintiff can perform. (Tr. 40). Thus, the

ALJ concluded that plaintiff was not disabled from April 1, 2012 through the date

of the decision. (Tr. 41).

B.    Plaintiff's Claims of Error

Plaintiff brings five claims of error. First, plaintiff argues that the ALJ erred

by not properly considering her painful os peroneum and the after-effects of the

corrective surgery. Specifically, the plaintiff argues that the ALJ largely ignored

this condition and in so doing, the RFC finding was not based on all relevant

medical and other evidence as required by the regulations. Plaintiff contends that

the surgery intended to correct this condition, resulted in permanent nerve damage

and numbness.  Plaintiff argues that the failure to consider this condition was error in and of itself but also impacted the ALJ's evaluation of plaintiff's subjective complaints and credibility.

Plaintiff argues that the ALJ erred in evaluating her credibility.  Plaintiff contends that, in discrediting her, the ALJ relied on a lack of significant findings in Dr. Ronyak's notes, other than tenderness on palpation and several rounds of steroid shots; plaintiff's cessation of physical therapy after nine sessions in May and June 2013; daily activities requiring functioning inconsistent with plaintiff's claims of disability; and routine and conservative medical treatment.  Plaintiff argues that the ALJ ignored Dr. Ronyak's prescribed CAM walker based on positive x-ray and MRI results, and his prescription for physical therapy.  Plaintiff also notes that physical therapy was discontinued because it produced no significant improvement in functioning and that surgery was contemplated, and ultimately, performed.

Plaintiff further refutes the ALJ's reliance on her daily activities, namely driving, home-schooling her daughter and pursuing part-time employment activities (baby sitting and basket weaving), as indications that her symptoms were inconsistent with her allegations.  Plaintiff argues that the ALJ mischaracterized her testimony about driving at least twice a week, claiming she actually testified that she drove up to twice a week, if necessary, and that such limited driving is not

inconsistent with her allegations of disability. She also argued that the ALJ did not develop any testimony regarding the details of the home-schooling of her daughter and thus, provided no explanation or meaningful reasoning on how this activity was inconsistent with plaintiff's allegations. Finally, plaintiff contends that the ALJ did not explain how her babysitting and basket weaving, activities which she eventually abandoned due to worsening symptoms, were inconsistent with her claims of disability. In sum, plaintiff argues that the ALJ's credibility evaluation was not supported by substantial evidence and thus warrants a remand.

Plaintiff next argues that the ALJ erred in failing to provide valid and adequate reasons for discounting the opinion of plaintiff's treating physician, Dr. Czesnowski. The ALJ gave Dr. Czesnowski's opinions very little weight because (1) they were based solely on plaintiff's subjective reports; (2) no substantive basis or explanation was provided to support the opinions; (3) Dr. Czesnowski only treated plaintiff for three months; and (4) there was no evidence that she reviewed any of plaintiff's previous treatment records. Plaintiff contends that these assertions are erroneous in that Dr. Czesnowski's opinion has support in the medical evidence, including her own clinical findings. Specifically, plaintiff identifies Dr. Czesnowksi's finding of lumbar paraspinal tenderness on exam along with muscle spasms, urging these findings support her symptoms. Plaintiff also notes Dr. Czesnowski's diagnoses of fibromyalgia, anemia, hypothryroidism,

low back pain and GERD. Plaintiff also contends that, as her treating physician who examined plaintiff multiple times, her opinion was due more deference than that of a consultant who never examined or treated her. Additionally, plaintiff contends that medical ethics would require Dr. Czesnowski to review plaintiff's prior medical records and that the ALJ's assumption to the contrary was pure speculation. In sum, plaintiff argues that remand is necessary for proper evaluation of Dr. Czesnowski's opinions.

Plaintiff also argues that remand is warranted because of an unresolved conflict between the VE's testimony and the DOT. Plaintiff asserts that the ALJ's broad request to be notified of any inconsistencies between the VE's testimony and the DOT did not satisfy her affirmative obligation to inquire about conflicts between the VE-provided evidence and information provided in the DOT. Moreover, plaintiff asserts that the VE's testimony is in clear conflict with the ALJ's intention to reach a decision consistent with the DOT. Plaintiff maintains that jobs identified by the VE, a telephone information clerk, an order clerk, and document preparer all require a GED reasoning level of 3, which she asserts is inconsistent with the RFC limit to unskilled jobs requiring only simple, routine tasks. Plaintiff argues that this conflict require at least an inquiry from the ALJ to explore and resolve the conflict. According to plaintiff, the ALJ's failure to do that here requires remand.

Finally, plaintiff argues that if the above claims of error do not justify a remand under Sentence Four of 42 U.S.C. §405(g), that her case should be remanded under Sentence Six because she has provided new material evidence which she had good cause for not previously submitting. Specifically, she identifies records of a foot surgery she underwent that resulted in permanent nerve damage, pain and numbness from the inadvertent severing of a nerve and the inability to repair it. Plaintiff asserts that she was unable to secure these records earlier because they contained information suggesting malpractice.

### C. The Commissioner's Motion for Summary Judgment

The Commissioner addresses plaintiff's claims of error as follows. First, the Commissioner argues that the ALJ adequately addressed plaintiff's foot condition and the resulting surgery in the decision, citing the ALJ's specific discussion of the os peroneum, the surgery as well as the deficits and improvements experience as a result. (Tr. 36). The ALJ went on to note that plaintiff presented in July 2014, post surgery, claiming she could barely walk, but was observed walking without difficulty by emergency room personnel. (Tr. 36, citing Tr. 684). The ALJ then noted that plaintiff received no treatment between July 2014 and December 2014, when she established a treating relationship with Dr. Czesnowski. However, she did not complain of foot pain or seek treatment for her left foot from Dr. Czesnowski. (Tr. 36-37). The Commissioner argues that this recitation

sufficiently supports the ALJ's conclusion that plaintiff's foot and ankle problems never consistently prevented her from the limited range of sedentary work described in the RFC. The Commissioner argues that plaintiff's assertions that the ALJ was required to discuss this ailment in more detail is not supported in law. The Commissioner points out that the ALJ is not required to explicitly discuss every piece of evidence. Moreover, according to the Commissioner, the plaintiff has the burden of demonstrating her RFC limits and that she fails to explain how the evidence she advances for further consideration would compel a reasonable mind to assess greater limitations than those imposed by the ALJ.

The Commissioner argues that the ALJ's credibility evaluation should be upheld because it is supported substantial, legitimate evidence. The Commissioner contends that the ALJ properly considered plaintiff's part-time work as a baby sitter and basket weaving as evidence that she was capable of more activity than her allegations suggest. Likewise, the ALJ properly considered plaintiff's home-schooling of her elementary school daughter as contradictory to allegations of pain and disability in general. Finally, the Commissioner argues that the ALJ appropriately cited plaintiff's significant periods without treatment, conservative treatment only consisting of NSAID medication for pain, being released to work without restrictions by her treating podiatrist, and walking with a normal gait (Tr. 36, citing Tr. 457, 459, 460, 461, 478) as undermining her

allegations regarding pain and disability. According to the Commissioner, the ALJ's credibility determination is entitled to deference and is sufficiently supported to be upheld.

The Commissioner also refutes plaintiff's argument that the ALJ improperly weighed Dr. Czesnowski's opinion. The Commissioner argues that the ALJ correctly discounted the weight afforded to Dr. Czesnowski because her so-called opinions are merely the noted limitations recited to Dr. Czesnowski by plaintiff. The Commissioner notes that opinions based solely on the representations of the claimant fall into the patently deficient category, thus permitting them to be summarily discounted.

The Commissioner argues that the ALJ had no duty to explore the potential conflict between the VE testimony and DOT definitions plaintiff now advances as grounds for remand. According to the Commissioner, since neither the VE nor plaintiff's counsel raised this potential conflict between the mental RFC and the DOT assigned level of the identified jobs at the hearing, there was no apparent conflict for purposes SSR 00-4p. Accordingly, as a matter of law, the ALJ had no obligation to explore or resolve the alleged conflict.

Finally, the Commissioner urges the Court to reject plaintiff's argument to remand under Sentence Six. The Commissioner contends that plaintiff cannot satisfy the good cause requirement for remand because the 2014 surgical records

clearly existed and were known to plaintiff during the 2015 hearing. Plaintiff's failure to pursue and secure these records for the record before the hearing, or to request the record be held open so that she could provide them, is the opposite of good cause, according to the Commissioner.

For all of the above reasons, the Commissioner asks that the court affirm the Commissioner's final decision because it is supported by substantial evidence and is free of harmful legal error.

D.    Plaintiff's Reply

Plaintiff responded to the Commissioner's brief arguing that the ALJ erred by failing to provide analysis of her foot/ankle conditions, to explain how the RFC accounted for them and failing to base the RFC on all relevant medical evidence. Plaintiff also disputed the Commissioner's assertion that the ALJ rightfully concluded that plaintiff's foot and ankle problems never consistently prevented limited sedentary work. Plaintiff argues this conclusion is specious because it does not discuss or explain whether the impairment is recurrent rather than continuous, such that it interferes with plaintiff's ability to sustain full time work activity. Plaintiff asserts this was a crucial inquiry for the ALJ. The plaintiff also itemizes evidence demonstrating that her impairment was persistent. (Tr. 382, 384-86, 388, 389, 392, 397, 402, 410, 411, 423, 433-34, 439, 581, 654, 702, 707, 709).

Plaintiff concludes by reiterating her previous argument that the ALJ's credibility evaluation was not properly evaluated, that the ALJ erred in assessing plaintiff's subjective complaints, and the errors were not isolated or harmless, as the Commissioner suggests.

## III. DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal

standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters*, 127 F.3d at 528. In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545. The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc.*

*Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky*, 167 Fed. Appx., at 508 ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted) (*see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be

determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of

his or her age, education, and work experience, benefits
are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing,

20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review

terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence

and severity of limitations caused by her impairments and the fact that she is

precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited

with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step

without a finding that the claimant is not disabled, the burden transfers to the

Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).

At the fifth step, the Commissioner is required to show that "other jobs in

significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at

241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter

differently and even where substantial evidence supports the opposite conclusion.

*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where

substantial evidence supports the ALJ's decision, it must be upheld.

    C.    <u>Analysis and Conclusions</u>

    1.    OS Peroneum and 2014 Surgery

Plaintiff's contention that the ALJ committed reversible legal error by failing to properly evaluate her os peroneum and the 2014 corrective surgery to correct that condition is belied by the fact that the ALJ did not merely mention the condition and surgery, but provided a full description and discussion of it. (Tr. 35-37). Moreover, plaintiff has presented no evidence that the ALJ's restrictive RFC does not already account for any limitations resulting from her foot condition alone or in combination with other impairments. Indeed, the RFC developed by the ALJ includes the following: "[t]he claimant must be allowed to alternate between sitting and standing up to four times per hour during the workday and she should never operate foot controls; crawl; or climb ladders, ropes or scaffolds." (Tr. 34). The RFC also includes a limitation for her to only occasionally climb ramps/stairs, balance, stoop, crouch, and kneel. *Id.* Plaintiff has the burden of demonstrating that her RFC is insufficiently restrictive. *See Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (claimant bears burden of demonstrating need for more restrictive RFC). Here, plaintiff does not show that the ALJ erred in evaluating this condition/impairment or that she was prejudiced on the merits. *See Kepke v. Commr. of Soc. Sec.*, 636 Fed. Appx. 625, 636–37 (6th

Cir. 2016).

     2.     Credibility

Plaintiff next argues that the ALJ failed to provide "good reasons" supported by substantial evidence for rejecting her credibility. The Court has stated that "[i]t is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of claimant ... [though] such determinations must find support in the record." *See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *see also Schmiedebusch v. Comm'r of Soc. Sec.*, 536 Fed. Appx. 637, 649 (6th Cir. 2013) ("We accord an ALJ's credibility determinations great weight and deference, and are limited to evaluating whether the ALJ's explanations for partially discrediting a claimant's testimony are reasonable and supported by substantial evidence in the record.").

Plaintiff argues that the ALJ improperly discredited her because her daily activities suggested a level of functionality greater than her claimed disabilities would permit. Specifically, the ALJ cited the fact that plaintiff drove at least twice a week, home-schooled her elementary school aged child and engaged in part-time work babysitting and basket weaving. First, the ALJ properly considered plaintiff's part-time employment as indication of her functionality. 20 C.F.R. §§ 404.1571 & 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually

did.").

Additionally, the ALJ's finding that plaintiff's credibility was reduced was based on several factors, with no one factor being determinative. For instance, the ALJ found that plaintiff provided inconsistent information regarding the effectiveness of opiate medication for her pain (Tr. 36), reported extreme symptoms, including being "barely able to walk," despite the fact that emergency room personnel observed her ambulating with no difficulty (*Id*.), received only routine and/or conservative treatment (NSAID pain relievers) for the allegedly disabling impairments, and went months without receiving any treatment. (*Id*.) These facts taken together constitute substantial evidence on which the ALJ could rely in discrediting plaintiff's claims about the limiting effects of her symptoms. *See Steagall v. Comm'r of Soc. Sec.*, 596 Fed. Appx. 377, 381 (6th Cir. 2015) ("An ALJ may discount a claimant's credibility when the ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."); *see also Lester v. Soc. Sec. Admin.*, 596 Fed. Appx. 387, 389 (6th Cir. 2015) (finding that the ALJ reasonably discounted a doctor's proposed limitations because, among other things, the claimant was receiving conservative treatment); *see also Kepke*, 636 Fed. Appx. at 638-39. Consequently, the ALJ did not err in assessing plaintiff's credibility.

### 3.    Treating Physician

Plaintiff also argues that the ALJ erred by discounting the weight afforded

to the opinions of Dr. Czesnowski, the physician who had treated her for three

months at the time she filled out the medical source statement.  "Medical opinions

are statements from physicians and psychologists or other 'acceptable medical

sources' that reflect judgments about the nature and severity of an individual's

impairment(s), including symptoms, diagnosis and prognosis, what the individual

can still do despite the impairment(s), and physical and mental restrictions."  SSR

06-3p, 2006 WL 2329939, at *2 (2006).  A "[d]octor's notation in his notes of a

claimed symptom or subjective complaint from the patient is not medical

evidence; it is the 'opposite of objective medical evidence.' [Thus,] [a]n ALJ is not

required to accept the statement as true or to accept as true a dissension's opinion

based on those assertions." *Masters v. Astrue*, 818 F. Supp. 2d 1054, 1067 (N.D.

Ill. 2011); *see also, Rincon v. Comm'r of Soc.Sec.*, 2015 WL 12720299, at * 7

(E.D. Mich. Aug. 24, 2015), report and recom. adopted, 2016 WL 922945 (E.D.

Mich. March 11, 2016) . "Otherwise, the hearing would be a useless exercise."

*Masters*, 818 F. Supp. 2d at 1067.

Contrary to plaintiff's position, the ALJ appropriately assigned Dr.

Czesnowski's opinion little weight.  The medical source statement and Dr.

Czesnowski's treatment records do not contain a physician's judgment on how the

nature and severity of plaintiff's impairments restrict or impact her capabilities,

but rather contain mere recitations of plaintiff's reported symptoms and subjective

complaints. (Tr. 537-542). Throughout the form, in response to instructions to

provide the medical or clinical findings to support the physician's assessment or

limitations and why, Dr. Czesnowski responds with "**patient states** she develops

immediate pain in her hands, shoulders, neck and back" or "**patient gives** history

of fibromyalgia." (*Id*.) (emphasis added). Dr. Czesnowski's treatment notes are

equally void of medical opinion, reflecting the same plaintiff-reported symptoms

and restrictions set forth in the medical source statement. (Tr. 544-553). Notably,

plaintiff's self-reported symptoms and restrictions are documented in the treatment

notes dated the same date as the medical source statement. (Tr. 552).

> P[atien]t states that she cannot lift items over 10 pounds
> at all. P[atien]t also claims she is unable to carry such
> weights because she develops significant pain in her
> shoulders and arms [bilaterally]. This pain develops
> shortly after initiating a task of this type. P[atien]t states
> that she can sit and stand for about 30 minutes at a time
> before developing pains in her back. P[atien]t states she
> must often reposition herself due to low back
> pain....P[atien]t states she is unable to push or pull most
> items due to issues with her pain....P[atien]t states she
> needs assistance with grocery shopping because she
> cannot lift over 10 pounds of weight.

(*Id*.) The medical source statement's mere parroting of plaintiff's reported

symptoms and complaints (as dictated by plaintiff the very day the statement was

completed) oppugns its status as an actual medical opinion under the regulatory definition. *See* SSR 06-3p; *Rincon*, 2015 WL 12720299, at * 7. Because Dr. Czesnowski's medical source statement and treatment records are not medical opinion, they are not due any deference under the regulations. Accordingly, the ALJ afforded them appropriate weight.

Even if Dr. Czesnowski's statement contained actual medical opinions, the ALJ's assignment of little weight to those opinions was proper. As the Sixth Circuit has previously held, it is not improper for the ALJ to consider whether a physician has identified objective medical findings to support a medical opinion. *See Price v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 172, 176 (6th Cir. 2009) ("Because Dr. Ashbaugh failed to identify objective medical findings to support his opinion regarding Price's impairments, the ALJ did not err in discounting his opinion."); *see also Teague v. Astrue*, 638 F.3d 611, 615-16 (8th Cir. 2011) (the ALJ could properly give little evidentiary weight to a treating physician's "checkoff form" of functional limitations which "did not cite clinical test results, observations or other objective findings").

In completing the medical source statement, Dr. Czesnowski did not explain reasons for her conclusions, and failed to include any references, notes, or test results. Thus, because the solicited information is not a medical opinion, but rather a recitation of plaintiff's subjective reports of symptoms and restrictions,

and a series of checked off functional limitations without supporting explanation or clinical records, the undersigned concludes that substantial evidence supports the ALJ's decision to discount the opinions of Dr. Czesnowski.

4.     VE Testimony

In plaintiff's fourth claim of error, she points to the ALJ's failure to question the VE regarding the conflict between the VE's testimony and the General Educational Development (GED) requirements, as described in the Dictionary of Occupational Titles ("DOT"), for the three jobs the VE testified plaintiff could do. The undersigned finds that this argument fails for two reasons. First, "nothing in applicable Social Security regulations requires the administrative law judge to conduct his or her own investigation into the testimony of a vocational expert to determine its accuracy, especially when the claimant fails to bring any conflict to the attention of the administrative law judge." *Kepke v. Commr. of Soc. Sec.*, 636 Fed. Appx. 625, 637 (6th Cir. 2016) (citing *Ledford v. Astrue*, 311 Fed.Appx. 746, 757 (6th Cir. 2008)). As was the case in *Kepke*, plaintiff's counsel here did not raise this conflict at the hearing and thus, the ALJ was under no duty to investigate any further than she did. Second, "neither the testimony of a vocational expert nor the occupational descriptions in the [DOT] necessarily trumps the other." *Ledford*, 311 Fed. Appx. at 757. The Social Security regulations did not require the ALJ or the VE to adopt the DOT's characterization of occupations in reviewing

plaintiff's case. *Id.* (citing *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003)). Therefore, the ALJ did not commit error in relying on the VE's testimony in this regard. *See Kepke*, 636 Fed. Appx. at 638.

5.     Sentence Six Remand

Finally, plaintiff contends that sentence six remand of the case to the ALJ for consideration of documents that pertain to her 2014 foot surgery is warranted. Sentence six of 42 U.S.C. § 405(g) permits a reviewing court to remand a case to the Commissioner for review of additional evidence "only if the evidence is 'new' and 'material' and 'good cause' is shown for the failure to present the evidence to the ALJ." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir.2010). Evidence is "new" if it was not available to the claimant or did not exist at the time of the administrative proceeding, and "material" if there is a reasonable probability that a different disposition of the claim would have been reached if the evidence had been presented initially. *Id.* (citing *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.2001). "Good cause" can be shown only by demonstrating a reasonable justification for failing to present the evidence at the administrative hearing. *Id.*

The evidence plaintiff offers post administrative hearing, namely the records from her 2014 surgery, is not "new" because it was in existence at the time of the 2015 hearing, nor she has not shown that the documents were unavailable to her. *See Kepke*, 636 Fed. Appx. at 639. Plaintiff intimates that she could not obtain the

records because they demonstrate medical malpractice. However, she does not detail or otherwise provide factual support for what is essentially a hypothesis. Furthermore, as the Commissioner points out, plaintiff sought to keep the record open only for some emergency room records, not for the surgical records at issue here - even though the surgical records were in existence at the time. Without such support, it cannot be said that plaintiff has demonstrated good cause to allow for the consideration of additional evidence. See *Bass v. McMahon*, 499 F.3d 506, 513 ("...plaintiff's counsel did not seek to have the record remain open to submit the evidence here provided, which in and of itself shows a lack of good cause.") Thus, remand under sentence six is not warranted in this case.

## IV. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: August 24, 2017           s/Stephanie Dawkins Davis  
                                                 Stephanie Dawkins Davis  
                                                 United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on August 24, 2017, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
